30

United States District Court
Southern District of Texas
FILED

**OCT 1 2 2001**

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JOSE O. HERRERA** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. B-00-179** |
| | § | |
| **THE EARTHGRAINS COMPANY** | § | |

## DEFENDANT THE EARTHGRAINS BAKING COMPANIES, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant, The Earthgrains Company, files this Motion for Summary Judgment and respectfully shows the following:

## I. PRELIMINARY STATEMENT - NATURE OF MOTION

Plaintiff is a former employee of Defendant and performed duties as a truck mechanic. Plaintiff was injured and was unable to perform the essential functions of his job. After Plaintiff obtained other full-time employment with another company, on about September 1, 1999 Plaintiff was discharged. Plaintiff alleges that his discharge was discriminatorily based on his age, alleged disability, and in retaliation for filing a claim for workers' compensation benefits.

There is no dispute of material fact and Defendant is entitled to summary judgment as a matter of law. Specifically, there is no basis for any claim of disability or age discrimination or retaliation. Plaintiff cannot present any evidence of a prima facie case of age discrimination and his claim is based entirely on subjective belief. Plaintiff is not a qualified individual with a disability because, as a matter of law, his limitations do not meet the requirements of a disability. Moreover, even if disabled, Plaintiff could not perform the essential functions of a mechanic for Defendant with or without reasonable accommodation.

Finally, there is also no evidence of a causal connection between Plaintiff's discharge and

C0052920 WPD.2 44180-109

his workers' compensation claim.

## II. RELEVANT UNDISPUTED FACTS[1]

On or about February 7, 1996, Plaintiff was hired as a Class C Fleet Mechanic by Defendant. *Pl. Dep.* 87:22-23; *Exhibit 1.* After approximately six months, Plaintiff was promoted to a Class A Fleet Mechanic by Gary Bryan ("Bryan"), the Garage Superintendent and Plaintiff's direct supervisor. *Exhibit 2.*

The job duties of a Class A Mechanic require performing all aspects of keeping Defendant's trucks and other vehicles operating. A copy of the job description for a Class A and B Fleet Mechanic is attached hereto as *Exhibit 3* and *Exhibit 16* and is incorporated herein for all purposes. Plaintiff admits that the job description accurately reflects the job duties he performed as a mechanic for Defendant. *Pl. Dep.* 58:16-20; 62:10-20. Such work includes doing oil changes, removing and replacing brakes, engine valve adjustments, replacing parts such as alternators, fuel injection pumps, rear differentials, and engines, fabrication work, and repairing flats. *Pl. Dep.* 50:3-51:8; 60:6-11. In order to perform these duties, it is often necessary to bend and lift fifty to one hundred pounds. *Pl. Dep.* 52:8-11; 52:24-53:3. For example, Plaintiff testified that engines weigh approximately 250 pounds and that transmissions weigh between 125 and 150 pounds. *Pl. Dep.* 54:18-55:1; 66:24-67:1. In addition, batteries weigh sixty-one pounds and due to their location in the truck, require extensive bending and lifting to remove and replace. *Bryan Aff. Exhibit 4.* Also, the combined weight of the wheels and tires is between one hundred and two hundred pounds, depending on the truck model. *Id.* Installing a radiator requires lifting thirty pounds and bending at the same time. *Id.*

Besides working in the garage, mechanics are often required to service vehicles on the side

---

[1] The following facts are placed in the light most favorable to Plaintiff and are undisputed solely for the purpose of this motion.

of the road when they break down. *Pl. Dep.* 48:24-49:2. Although there are many pieces of equipment in the garage to assist the mechanics in lifting and bending, such as creepers, hoists, hydraulic jacks, and come-alongs, these tools are not available when working outside the garage nor are they useful in many tasks. *Pl. Dep.* 67:18-68:10.53:6-54:17; *Exhibit 4*.

On August 10, 1998, while removing a transmission weighing approximately 150 pounds, Plaintiff reported that he slipped on a greasy part of a truck chassis and twisted and fell on his lower back. *Pl. Dep.* 65:18 - 74:16; *Exhibits 5 and 6*. After being offered to be seen by a doctor, Plaintiff refused to seek medical treatment and continued to work that day. *Pl. Dep.* 75:18-22. After being encouraged by garage personnel, Plaintiff filed an Injury and Illness Investigation Report. *Pl. Dep.* 78:11-20; *Exhibit 5*. Upon experiencing increasing pain over the days following the accident, Plaintiff decided to seek medical care.[2] *Pl. Dep.* 89:22 - 90:6; 105:6-10. Plaintiff was taken by Mr. Bryan, his supervisor. *Bryan Dep.* 64:24-65:12; *Exhibit 7*. Plaintiff visited San Benito Medical Associates and was advised to go home and rest. *Pl. Dep.* 110:13-14. After receiving the report that he should be absent from work, Plaintiff discussed the loss of pay with Mr. Bryan. Mr. Bryan reminded Plaintiff of the Company's light duty policy and asked if that was something he wanted him to check on. *Bryan Dep.* 68:22-69:11. Plaintiff indicated he did. *Id.*

Based on Plaintiff's desires, Mr. Bryan contacted San Benito Medical Associates about whether Plaintiff was capable of light duty work. *Pl. Dep.* 113:7-114:4; *Bryan Dep.* 67:1-68:25. Plaintiff's treating physician then cleared him for light duty work. *Bryan Dep.* 67:1-68:2. Plaintiff was subsequently assigned light duty work in the garage. This work included answering phones and

---

[2] Plaintiff claims that two persons whom he did not work for and had no supervisory or other responsibility questioned whether he was "faking" his limp caused by his injury. *Pl. Dep.* 199:9-200:19; 202:1-7; 203:6-15; 204:9-206:16.

assisting in completing garage paperwork. *Pl. Dep.* 115:22-116:7; *Bryan Dep.* 137:18-138:3; *Exhibit 8*. Plaintiff admits that he could do this light duty work. *Pl. Dep.* 116:8-13; 118:14-20; 121:18-20. To accommodate Plaintiff and provide him a place to rest when his back was hurting, Mr. Bryan brought in a sofa sleeper. *Pl. Dep.* 118:21-24; 127:15-25. Plaintiff was allowed to take breaks as often as needed. *Pl. Dep.* 118:21-24.

A few days after beginning his light duty assignment, Plaintiff informed Mr. Bryan that he could no longer come to work. *Pl. Dep.* 144:25-145:8. During his absence, Plaintiff called Mr. Bryan approximately once a week to check in and report his progress. *Pl. Dep.* 147:7, 147:11-13. Plaintiff was referred to another physician for a neurological evaluation and was later recommended to have spinal surgery. *Pl. Dep.* 123:2-5; *Exhibits 9 & 10*. Plaintiff had back surgery and attended a work-hardening rehabilitation program. *Exhibit 11*.

While Plaintiff was out recovering from his injury and surgery, on July 28, 1999, Defendant hired a person (Mr. Cantu) to perform driving duties and some mechanic work. *Bryan Aff; Exhibit 4; Exhibit 17*. He was forty years old. *Id.* Because he was involved in a motor vehicle accident, he was discharged on about October 25, 1999. *Id.* He has not been replaced. *Id.*

Plaintiff returned to work on June 7, 1999 with a release from his physician. *Pl. Dep.* 155:15-156:10. The release had two restrictions: Plaintiff could not lift anything over 30 pounds and could not bend from the waist. *Exhibit 12*. Because Plaintiff was unable to perform the essential job duties of a mechanic due to his lifting and bending restrictions, Plaintiff was moved to a transport driver. *Silva Aff.; Exhibit 13; Pl. Dep.* 178:14-179:8. After a few days in this position, Plaintiff complained that the job was aggravating his back. *Pl. Dep.* 179:13-180:3; *Silva Aff.* Virginia Silva, Human Resource Manager for Defendant, then offered Plaintiff a sales position in a store in Corpus Christi. *Pl. Dep.* 182:10-21. Plaintiff refused the position. *Pl. Dep.* 182:22-23. Plaintiff refused

the position because "I'm a mechanic, not a bread salesman." *Pl. Dep.* 182:22-23 (emphasis added).

Plaintiff asked the plant's Human Resources Manager if the company could provide him a "helper"

to perform the lifting and bending requirements of a mechanic. *Pl. Dep.* 236:20-237:1. Plaintiff's

request was denied because it would require removal of essential duties of the position. *Pl. Dep.*

236:20-23. Plaintiff was informed that with his current restrictions, he could not return to the

mechanic position without being released by his physician. *Silva Aff.*; *Bryan Dep.* 104:18-22.

Thereafter, on or about July 17, 1999, Plaintiff applied for and began working for Southern

Foods Group. *Exhibit 14.* After learning of Plaintiff's new employment, on or about September 1,

1999, Plaintiff was separated from Defendant's employ. *Silva Aff.*; *Exhibit 15.* At the time of his

discharge, Plaintiff was forty-two years old. Defendant has not refilled the position.

Since his separation from Defendant, Plaintiff has held many jobs. Plaintiff has worked at

Hygeia doing mechanic work and truck driving. *Pl. Dep.* 18:16 -23. Plaintiff has also worked for

Broadband Services as an installer of satellite dishes. *Pl. Dep.* 252:13-22. Currently, Plaintiff is

self-employed and is in the business of driving a truck. *Pl. Dep.* 8:19-9:1.

### III.  ARGUMENT AND AUTHORITIES

**A.      Plaintiff's Claim of Disability Discrimination Under Chapter 21 of the Texas
Commission on Human Rights Act Is Without Merit**

**1.      Plaintiff's Burden to Establish a Prima Facie Case of Disability Discrimination**

Because Texas courts refer to the implementation of analogous federal statutes, applicable

federal case law under the ADA should be followed. *Caballero v. Central Power and Light Co.*, 858

S.W.2d 359, 361 (Tex. 1993); *Austin State Hosp v. Kitchen*, 903 S.W.2d 83, 87, n.3 (Tex.App. –

Austin 1995, no writ); *Holt v. Lone Star Gas Co.*, 921 S.W.2d 301, 304 (Tex.App. – Fort Worth

1996, no writ). To establish a prima facie case of disability discrimination under the Texas

Commission on Human Rights Act (TCHRA), a plaintiff must prove that "(1) he is a disabled person as defined in the TCHRA; (2) he was discriminated against *because of* his disability; *and* (3) that the decision to terminate was based solely on his disability." *McIntyre v. Kroger Co.*, 863 F.Supp. 355, 357 (N.D.Tex. 1994). *See also Taylor v. Blue Cross and Blue Shield of Texas, Inc.*, 55 F.Supp.2d 604, 609 (N.D. Tex. 1999); *Farrington v. Sysco Food Services, Inc.*, 865 S.W.2d 247, 251 (Tex.App. – Houston [1st Dist.] 1993, writ denied); *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 64 (Tex.App. – Houston [14th Dist.] 1998, no writ); *Greathouse v. Alvin Independent School Dist.*, 17 S.W.3d 419, 423 (Tex.App. – Houston [1st Dist.] 2000, no writ).

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981); *Taylor* 55 F.Supp.2d at 609; *Kitchen*, 903 S.W.2d at 90. Upon such an articulation, the plaintiff must then persuade the court that the employer's basis for the complained of action is pretextual. *Id.* at 256. Further, a plaintiff must prove that the employer's reasons are not just pretext, but they are pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 523-524 113 S.Ct. 2742, 2756 (1993), *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). At all times, the plaintiff has the ultimate burden of establishing that he was the victim of intentional discrimination. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Burdine*, 450 U.S. at 256).

## 2.    Plaintiff Is Not Disabled as a Matter of Law

The TCHRA prohibits an employer from discriminating against a disabled individual. TEX. LABOR CODE §§ 21.051, 21.105. The TCHRA defines disability as a mental or physical impairment that substantially limits at least one major life activity of that individual; having a record

of such an impairment; or being regarded as having such an impairment.[3] Id. §21.002(6); *Holt*, 921 S.W.2d at 305; *Azbuike*, 970 S.W.2d at 63; *see also* 42 U.S.C. §12102(2) (ADA).  An impairment "substantially limits" an individual if it prevents him or her from performing a major life activity that the average person in the general population can perform or if it significantly restricts the condition, manner or duration under which an individual can perform a major life activity.  29 C.F.R. §1630.2(j).  Major life activities include caring for oneself, performing manual tasks, walking, seeing, breathing, learning, and working. 29 C.F.R. §1630.2(i).

Plaintiff has not identified or provided evidence of any major life activities that he is substantially limited from performing.   Inability to lift thirty pounds or bend at the waist are not disabilities as a matter of law.  *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 349 (4th Cir. 1996)(25 pound lifting restriction does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity as a matter of law); *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1319 (8th Cir. 1996)(25 pound lifting restriction does not "significantly restrict" major life activities); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997)(plaintiff's lifting restrictions of 25, 50, and 100 pounds are not substantially limiting); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 200 (4th Cir. 1995)(summary judgment for defendant upheld on ADA claim premised on a temporary 20 pound lifting restriction).

Further, Plaintiff admits that he is not limited in any major life activities as he can care for himself, play with his children, walk and work. *Pl. Dep.* 30:1-6; 242:13-16.  The only limitations identified by the Plaintiff due to his injury are that it takes him longer to do lawn work, he cannot

---

[3]  Plaintiff only alleges that he is physically impaired.  There is no allegation that he is disabled based on either a record of an impairment or regarded as having such an impairment. Moreover, there is no evidence to support either of these potential but unasserted basis for recovery. Therefore, Plaintiff is precluded from asserting these types of disability discrimination claims.

participate in sports as much,[4] and he lacks confidence. *Pl. Dep.* 26:23-27:10; 29:8-15. These limitations do not constitute a substantial limitation on major life activities as a matter of law. For example, in *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60 (Tex.App.–Houston [14th Dist] 1998, no writ), the plaintiff experienced problems with his back, legs, and right knee. *Id. at 62.* He claimed that his physical problems substantially limited his performance of any job involving bending and heavy lifting, day-to-day tasks around the house, playing with or lifting his children, and sexual relations with his wife. The court, acknowledging that the plaintiff suffered from an impairment, found that these restrictions did not rise to the level of a disability as defined by the TCHRA. *Id. See also, Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (lifting 50 pound containers is a "discrete task" and does not render a person substantially limited in a major life activity); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir. 1998)(plaintiff's restriction on lifting, only proves that she is limited from heavy lifting, not the routine duties of daily living.)  Like *Azubuike*, Plaintiff suffers from an impairment, but his impairment is not so severe as to constitute a disability. By his own admissions, Plaintiff is not substantially limited in any major life activity.

Plaintiff also claims that he is substantially limited in his ability to work. To establish a substantial limitation on working, a plaintiff must demonstrate a significant restriction in his or her ability to perform either a class of jobs or a broad range of jobs in various classes. 29 C.F.R. 1630.2(j)(3)(i); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-492, 119 S.Ct. 2139, 2151 (1999); *Sherrod*, 132 F.3d at 1120; *Kiser v. Original, Inc.*, 32 S.W.3d 449, 452 (Tex.App. – Houston [14th Dist.] 2000, no writ). A plaintiff must show that he or she is precluded from more than one type of job, a specialized job, or a particular job of choice. "If jobs utilizing an individual's skills

---

[4]Plaintiff vaguely asserts "he can't play the way he used to."

(but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton*, 527 U.S. at 492.

The only restriction on Plaintiff's ability to perform work is that he cannot pick up anything over 30 pounds, or bend at the waist. *Pl. Dep.* 167:19-25. This has not limited Plaintiff from a class of jobs or a broad range of jobs. Since Plaintiff's separation from Defendant, he has been employed in various occupations. Plaintiff has been a light vehicle mechanic, a truck driver, and a satellite dish installer. *Pl. Dep.* 8:19-9:1; 18:16-23; 252:13-22. Plaintiff's lifting and bending limitations do not constrain his ability to be employed in a broad range of jobs and is therefore not a substantial limitation on the major life activity of working.

Moreover, courts have continuously held that lifting and bending restrictions similar to the Plaintiff's do not constitute a substantial limitation on the major life activity of working. In *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998), the plaintiff, a former flight attendant, sought reinstatement after an on-the-job injury but was disqualified from returning to her position based on her lifting limitation. *Id.* at 1120. The only evidence produced by the plaintiff to bolster her disability discrimination claim were her medical records stating that she was restricted to lifting forty-five pounds occasionally and twenty pounds frequently. *Id.* The court concluded that the restrictions only showed that she was precluded from the job of flight attendant but not from a broad range or class of jobs and was therefore not substantially limited in the major life activity of working. *Id.*

### 3.   Plaintiff Is Not "Otherwise Qualified"

In disability discrimination cases under both the ADA and TCHRA, a disabled plaintiff bears the burden of showing that he is "otherwise qualified." *Pena v. Houston Lighting & Power Co.*, 978

F.Supp. 694, 697 (S.D. Tex. 1997); *Austin State Hosp.*, 903 S.W.2d at 91. The term "otherwise qualified" means "satisfying all the skill, experience, education, or other requirements for a job, except for needing reasonable accommodation to perform the job's essential functions." 29 C.F.R. 1630.9, Appendix; 42 U.S.C. §12111(8); *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 483 (5th Cir. 2001).

Assuming arguendo Plaintiff is disabled, to determine whether a plaintiff is a "qualified individual" with a disability, the first point of analysis for courts is whether the plaintiff can perform the essential functions of the job she holds. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993); *Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir. 1995). Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience or past incumbents on the job; and/or (7) the current work experience of incumbents in similar jobs. 29 C.F.R. 1630.2(n)(3); *Rios v. Indiana Bayer Corp.*, 965 F.Supp. 919, 922 (S.D. Tex. 1997). Furthermore, physical criteria, such as the ability to lift heavy loads, must be necessary and substantially related to a person's ability to perform the essential functions of the job. *Rios*, 965 F.Supp. at 922. Thus, the talisman for determining whether a function is essential is whether the function "bear[s] more than a marginal relationship to the job at issue." *Chandler*, 2 F.3d at 1393 (emphasis added); *Rios*, 965 F.Supp. at 922.

Lifting in excess of thirty pounds and bending are essential functions of a Class A Fleet Mechanic. These lifting and bending requirements are incorporated into the job description that was first developed in January 1992, almost four years prior to the hiring of Plaintiff. *Exhibit 3.*

Furthermore, Plaintiff was repeatedly told during his employment that lifting was part of a mechanic's job. *Pl. Dep.* 176:19-177:3; *See also Exhibit 3.* An individual who is unable to lift more than thirty pounds or bend at the waist could not perform most of the job functions of a mechanic. *Bryan Aff.* For instance, a battery weighs sixty-one pounds and in order to install it, the mechanic must lift the battery straight up from the waist and lean over the hood area and set the battery down. The same is true for removing a radiator. A mechanic must first lean over the hood area and remove the bolts, then crawl underneath the truck to remove the hoses, and then climb back out and lift the radiator straight out of the hood area. Changing a tire also requires extreme lifting and bending, particularly since the tire and wheel weigh approximately two hundred pounds. *Id.*

Plaintiff even admits that changing a tire is an essential job of a mechanic but that his disability would prevent him from doing so. *Pl. Dep.* 176:7-10. Because the mechanic's job requires extensive lifting and bending and the Plaintiff's restrictions prevent him from lifting or bending, Plaintiff is unable to perform the essential job functions of a mechanic and he is therefore not a qualified individual with a disability.

### 4.    There Is No Reasonable Accommodation for Plaintiff

Under the *Chandler* court's analysis, if a court concludes that the plaintiff is disabled and is not able to perform the essential functions of the job, the court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Chandler*, 2 F.3d at 1394. If no reasonable accommodation would enable the plaintiff to perform the essential functions of the position, then he or she is not a "qualified individual" with a disability and is not subject to the protection afforded by the ADA or TCHRA. *Tyndall v. National Educ. Centers, Inc.*, 31 F.3d 209, 212-13 (4th Cir. 1994).

A "reasonable accommodation" is a modification or adjustment that allows an individual to perform the essential functions of the job. 42 U.S.C. §12111(9); 29 C.F.R. 1630.2(o). Common examples of reasonable accommodations include making facilities accessible; restructuring jobs; using part-time or modified work schedules; reassignment to a vacant position; acquiring or modifying equipment, devices, examinations, training materials, or policies; or providing qualified readers or interpreters. 42 U.S.C. 12111(9); 29 C.F.R. 1630.2(o)(2). To be a reasonable accommodation, the accommodation offered need not be the one desired by the employee.

Assuming arguendo that Plaintiff is disabled, there is no reasonable accommodation which would allow him to perform the essential functions of a mechanic and Defendant otherwise accommodated Plaintiff. Upon returning to work after his back surgery, Plaintiff asked Ms. Silva for a "helper" to do the work that would require lifting more than thirty pounds. *Pl. Dep.* 236:20-237:1. Essentially, Plaintiff requested to remove all functions of the job that he could not do. The Fifth Circuit, as well as other courts throughout the country, has held that "the ADA does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties." *Robertson . Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998)(emphasis added); *see also Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997). *Robertson . Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998) is particularly on point. Similar to Plaintiff's claim herein, in *Robertson*, the plaintiff claimed that he could perform the essential functions of his job if some of his job duties were assigned to an assistant. *Robertson*, 161 F.3d at 295. The court held that because the plaintiff could not perform the essential functions of his job, absent assigning those duties to someone else, he could not be reasonably accommodated. *Id. See also, Barber*, 130 F.3d at 709 ("It is true that

12

the law does not require an employer to transfer from the disabled employee any of the essential functions of his job.").

Like *Robertson*, Plaintiff cannot perform the essential job functions of a mechanic without assigning these jobs to someone else. This is not a reasonable accommodation. Plaintiff's request for a helper would require Defendant to create a new position and hire someone to fill that position. This is not required by either the ADA or TCHRA. *Robertson*, 161 F.3d at 295. Thus, he is not entitled to protection under the ADA or TCHRA. *Tyndall,* 31 F.3d at 212-13.

Instead of hiring a helper, Defendant attempted to accommodate Plaintiff by offering him other positions within the company. In an attempt to comply with Plaintiff's limitations, upon his return, Plaintiff was first given the position of a full-time transport driver. *Pl. Dep.* 178:14-24. After a very short time in this position, Plaintiff complained that the driving irritated his back. *Pl. Dep.* 179:13-180:6. Plaintiff was then offered a sales position in a store in Corpus Christi but declined the job offer, stating "I'm a mechanic, not a bread salesman." *Pl. Dep.* 182:12-23.

Transfer to a vacant position is a reasonable accommodation. 42 U.S.C. §12111(9)(B); 29 C.F.R. 1630.2(o)(2)(ii). Moreover, just because Plaintiff did not consider himself a bread sales man does not make the accommodation unreasonable as the accommodation offered need not be what was desired. *Rayha v. United Parcel Serv., Inc.*, 940 F.Supp. 1066, 1070 (S.D. Tex. 1996)("The principle that an employee is entitled only to a reasonable accommodation and not to the preferred accommodation is firmly rooted in caselaw established under both the ADA and the Rehabilitation Act."); *Washington v. Occidental Chem. Corp.*, 24 F.Supp.2d 713, 729 (S.D.Tex. 1998)(The ADA's duty of accommodation requires employees to seek reasonable accommodations rather than merely preferred accommodation."); *see also Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 622-623

(5th Cir. 2000). The evidence demonstrates that Defendant took reasonable steps to accommodate and help Plaintiff but Plaintiff rebuffed Defendant's efforts.

**B.**  **Plaintiff's Claim Of Retaliation For Filing A Workers' Compensation Claim Is Without Merit**

    **1.**  **Defendant is Entitled To Summary Judgment Because There Is No Causal Connection Between Plaintiff's Discharge and Filing a Workers' Compensation Claim.**

In a suit pursuant to Texas Labor Code Chapter 451, a plaintiff must establish a causal link between the alleged discriminatory conduct and his claim for workers' compensation benefits. *Hughes Tool Co. v. Richards*, 624 S.W.2d 598, 599 (Tex.App. – Houston [14[th] Dist.] 1991, writ ref'd n.r.e.). Although it is not necessary for a plaintiff to establish an exclusive causal connection between the alleged conduct and the filing of a workers' compensation claim, the employee must still prove that the filing of the workers' compensation claim <u>was a determining factor</u> for the alleged discriminatory action. *Santex, Inc. v. Cunningham*, 618 S.W.2d 557, 559 (Tex.Civ.App. – Waco 1981, no writ); *Parham v. Carrier Corp.*, 9 F.3d 383, 386 (5th Cir. 1993). Thus, Plaintiff must prove that "but for" his workers' compensation claim, he would not have been discharged. *Continental Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633-37 (Tex. 1995); *McIntyre v. Lockheed Corp.*, 970 S.W.2d 695, 697 (Tex.App. -- Fort Worth 1998, no writ).

Circumstantial evidence may be used by a plaintiff to establish a causal link between his termination and the filing of a workers' compensation claim. *Continental Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77 (Tex.App. – Houston [14[th] Dist.] 1995, judgment aff'd in part rev'd in party by 937 S.W.2d 444 (Tex. 1996)); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.--El Paso 1989, writ denied). Circumstantial evidence routinely used by plaintiff's to

show a causal link includes knowledge of the claim by those making the discharge decision; negative attitude toward the employee's injured condition; failure to follow company policy when disciplining the employee who made the claim; and discriminatory treatment of the employee compared to other employees. *Continental Coffee*, 903 S.W.2d at 77; *Hinerman v. Gunn Chevrolet*, 877 S.W.2d 806, 808 (Tex.App. – San Antonio 1994, rev'd in part on other grounds by 898 S.W.2d 817); *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App. -- Fort Worth 1993, writ denied). However, the employee's subjective belief alone is not enough to support a causal connection. *Housing Authority of City of El Paso v. Guerra*, 963 S.W.2d 946, 950 (Tex.App. – El Paso 1998, no writ); *Continental Coffee*, 903 S.W.2d at 79.

Plaintiff has no evidence to support a causal connection between his termination and filing a workers' compensation claim. Indeed, evidence is to the contrary. Defendant offered to take Plaintiff to the doctor, filed his workers' compensation claim and assisted him in retaining benefits by providing light duty. In fact, Plaintiff's deposition testimony proves that there is no evidence of a causal connection.

> Q:    At any time did anybody at Earthgrains treat you in a manner that you considered to be poorly, poor or mean because you filed a workers' compensation claim?
>
> A:    Not that I remember.

*Pl. Dep*. 185:3-7. The only evidence Plaintiff identifies to attempt to establish a causal connection is that he heard other people in the company, though he cannot remember who, talking about "lost time" due to workers' compensation claims.[5] *Pl. Dep*. 187:6-13. When asked specifically whether the people talking about lost time were his supervisors or had the authority to fire him, Plaintiff testified that they were not. *Pl. Dep*. 186:22-187:5. Thus, in the absence of any evidence of

---

[5] Such statements are no evidence at all as they are hearsay.

discriminatory or inappropriate behavior against the Plaintiff due to his workers' compensation claim, other than Plaintiff's subjective beliefs, Plaintiff's claim of workers' compensation retaliation is insufficient as a matter of law.[6]

### 2. Plaintiff Has Failed to Rebut Defendant's Legitimate Reason for Plaintiff's Discharge

Once a plaintiff makes a prima facie showing of a causal link between the filing of a workers compensation claim and his discharge, the burden shifts to the employer to rebut the alleged retaliatory discrimination by showing a legitimate reason for the employee's discharge. *Hogue v. Blue Bell Creameries, L.P.*, 922 S.W.2d 566, 569 (Tex.App. – Texarkana 1996, writ denied); *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App. – Fort Worth 1993, writ denied); *Trevino v. Corrections Corp. of America*, 850 S.W.2d 806, 808 (Tex.App. – El Paso 1993, writ denied). An employer is entitled to summary judgment when it articulates a legitimate, non-discriminatory reason for the plaintiff's discharge and the plaintiff fails to produce any evidence of a retaliatory motive. *Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 312-313 (Tex. 1994); *Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916, 919 (Tex.App. – San Antonio 1997, writ denied).

Under Texas law, an employer is permitted to terminate an employee who sustains a job-related injury if it ultimately appears that, due to the nature of the injury, the employee can no longer perform the essential functions of his position. *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583,

---

[6] Plaintiff also testified that two individuals, neither of which were managers or supervisors, expressed doubts about the validity of his injury approximately a year before his separation. *Pl. Dep.* 199:11-200:19; 202:5-207:21. Stray remarks are statements that are "isolated (i.e. not accompanied by other remarks similar in nature) or not accompanied by other evidence indicative of discriminatory animus." *Bumstead v. Jasper County*, 931 F.Supp. 1323, 1334 (E.D. Tex. 1996); *Normand v. Research Inst. of America, Inc.*, 927 F.2d 857, 864 n.3 (5th Cir. 1991). The statements identified by Plaintiff are stray remarks and as such, cannot be used to establish a claim of retaliation. *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993); *Turner v. North Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992); *Normand*, 927 F.2d at 864 n.3.

590 (5th Cir. 1995); *Garcia v. Allen*, 28 S.W.3d 587, 601 (Tex.App. -- Corpus Christi 2000, no writ);

*Schrader v. Artco Bell Corp.*, 579 S.W.2d 534, 540 (Tex.Civ.App. -- Tyler 1979, writ ref'd n.r.e.);

*See also, Terry v. Southern Floral Co.*, 927 S.W.2d 254 (Tex.App. – Houston [1st Dist.] 1996, no

writ)(employee's absence from work was a legitimate reason for termination); *Hogue*, 922 S.W.2d

at 569-570 (employer stated legitimate reasons for discharging employee, namely that employee

would give no indication when he would return to work, had been off for more than six weeks, made

no indication that he wanted his job, and had negative attitude concerning continued employment).

Defendant discharged Plaintiff due to his inability to perform the essential functions of a

mechanic. Defendant made attempts to accommodate Plaintiff by offering him alternative positions

but the Plaintiff was either unable to perform these jobs or refused to accept the positions.

Additionally, while still employed with Defendant, Plaintiff accepted employment from another

competitor. An employer is not obliged to retain an employee who has found employment

elsewhere. Thus, Defendant has advanced a legitimate business reason for Plaintiff's discharge.

Moreover, Plaintiff has failed to show any retaliatory motive on the part of the Defendant.

The only basis for Plaintiff's claim is that he believed that the Defendant did not want any "loss of

time." Pl. Dep. 208:12-21. However, Plaintiff is unable to identify any comments made by

individuals about his workers' compensation claim. Pl. Dep. 209:2-10. As stated above, Plaintiff

may not rely on his own subjective beliefs to maintain a claim for retaliation nor may he impose his

subjective beliefs on Defendant without direct evidence. *Johnson v. Alcatel Network Systems*,963

F.Supp. 599, 604 (N.D.Tex. 1996); *Castor v. Laredo Community College*, 963 S.W.2d 783, 785

(Tex.App. – San Antonio 1998, no writ). Therefore, Defendant is entitled to summary judgment on

Plaintiff's claim of workers' compensation retaliation under Chapter 451 of the Texas Labor Code.

**C.**     **Plaintiff Cannot Establish Even A Prima Facie Case Of Age Discrimination And His Claim Is Without Merit**

Under the TCHRA, it is unlawful for an employer to discharge an individual because of age. TEX. LABOR CODE §21.051(1); see also 29 U.S.C. §623(a)(1). To establish a prima facie case, Plaintiff must show that he is within the protected age group; that he was adversely affected by the employer's decision; that he was qualified for the position; and he was replaced by someone younger or otherwise show that he was discharged because of age. *Adams v. Valley Fed. Credit Union*, 848 S.W.2d 182, 186-187 (Tex.App. -- Corpus Christi 1992, writ denied); *Trico Techs. Corp. v. Rodriguez*, 907 S.W.2d 650, 651 (Tex.App.-- Corpus Christi 1995, no writ); *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex.App. -- Corpus Christi 1995, writ denied).

Plaintiff's prima facie case of age discrimination is severely flawed for two reasons. First, Plaintiff cannot state any conduct or behavior at Earthgrains that could even slightly resemble age discrimination. Instead, Plaintiff relies on his experiences with other companies to substantiate his claim.

> Q:     What reason do you have to believe that age had anything to do with any decision relating to you?
>
> A:     Just the experiences I have seen.
>
> Q:     At the company?
>
> A:     Well, the different companies.
>
> Q:     Nothing in our company?
>
> A:     I'm not sure. I'm not sure.
>
> Q:     Tell me what you believe indicates to you that you were discriminated against because of your age at Earthgrains.

A:      I believe those people are looking, "This guy is not getting any younger.  He is already hurt.  He's getting older."

Q:      And what do you base that on besides your own personal belief?

A:      Just on my own personal belief.

Q:      Just your own personal belief.  You never heard anybody make any age comments or anything, did you?

A:      No, sir.

Q:      You're making you claim based on what you experienced in other businesses?

Q:      Is that correct?

A:      It's just a thought I have.

*Pl. Dep.* 153:4-23; 154:4-8.  As Plaintiff's deposition illustrates, Plaintiff has absolutely no evidence of age discrimination by Defendant.  Rather, Plaintiff would like to impute his own ideas and his previous employment experiences onto Defendant to prove age discrimination.

Plaintiff also relies on his belief that Defendant hired a "younger person" to replace him to support his claim of age discrimination.  At the time of his discharge, Plaintiff was forty-two years old.  The person hired by Defendant, Mr. Cantu, was a temporary worker assigned primarily as a transport driver.  At the time of his hire and separation, Cantu was 40 years old.  Plaintiff was 42.

In *O'Connor v. Consolidated Coin Caterers Corp.*, 116 S.Ct. 1307, the United States Supreme Court held that an inference of age discrimination <u>cannot</u> be drawn by the replacement of one worker with another worker who is <u>insignificantly younger</u>. *Id.* at 1310.  Thus, the two year age difference between Plaintiff and his replacement is not sufficient to evidence an age discrimination claim.  Plaintiff has failed to establish a prima facie case of age discrimination because he has not shown he was replaced by a younger person.

Further, Plaintiff has not been replaced at all. Mr. Cantu was hired on a temporary basis while Plaintiff was out recovering from his surgery. Neither Mr. Cantu nor Plaintiff have been replaced as no new mechanics have been hired. Consequently, Plaintiff has not been replaced at all. Additionally, as discussed above, Plaintiff cannot establish that at the time of his separation he was qualified for the position. To be qualified, an employee must be able to perform the functions of the job at the time. Not only could Plaintiff not do so when separated, according to him, his restrictions are permanent.

## IV. CONCLUSION

As presented above, the evidence viewed in light most favorable to Plaintiff does not support his claims and Defendant is entitled to Summary Judgment as a matter of law. Plaintiff is not substantially limited and therefore not disabled. Moreover, even if disabled, there was no reasonable accommodation that would allow Plaintiff to perform the essential functions of a Class A mechanic. Further, Plaintiff was offered a reasonable accommodation which was refused for no reason other than Plaintiff's misguided belief that he "is a mechanic and not a bread salesman." Finally, Plaintiff's age and retaliation claims are based solely on supposition without any supporting evidence to establish a prima facie case or any inference of discriminatory animus.

WHEREFORE, PREMISES CONSIDERED, Defendant requests that its motion be granted, that judgment be entered in Defendant's favor and that it be awarded all such other relief to which it may justly be entitled.

Respectfully submitted,

MATTHEWS & BRANSCOMB
A Professional Corporation
802 N. Carancahua, Suite 1900
Corpus Christi, Texas  78470-070
Telephone: (361) 888-9261
Facsimile:  (361) 888-8504

By _____

      Keith B. Sieczkowski
      Attorney-In-Charge
      State Bar No. 18341650
      Southern District No. 17118
      Jessica A. Neal
      State Bar No. 24027685
      Southern District No. 27680

ATTORNEYS FOR DEFENDANT
EARTHGRAINS BAKING COMPANIES, INC.

## CERTIFICATE OF SERVICE

      I do hereby certify that a true and correct copy of the above and foregoing instrument has been served by United States Certified Mail, Return Receipt Requested on the following counsel in charge on this 11th day of October, 2001, in accordance with *Fed. R. Civ. P.*

Carlos E. Hernandez, Jr.                      **C. M. No. 7000 1670 0004 6031 5538**
Attorney-In-Charge                           **RETURN RECEIPT REQUESTED**
The Garcia Law Firm, P.C.
201 North First Street
Harlingen, Texas  78550

_____
Keith B. Sieczkowski